John M. Morrison
MORRISON SHERWOOD WILSON DEOLA PLLP
401 North Last Chance Gulch · P.O. Box 557
Helena, Montana 59624-0557
(406) 442-3261
(406) 443-7294 facsimile
john@mswdlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| CHARLES M. BUTLER, III and CHOLE BUTLER, | Cause No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| UNIFIED LIFE INSURANCE COMPANY, HEALTH PLANS INTERMEDIARIES HOLDINGS, LLC, D/B/A HEALTH INSURANCE INNOVATIONS, HEALTH INSURANCE INNOVATIONS, INC., ALLIED NATIONAL, INC., NATIONAL BROKERS OF AMERICA, INC., THE NATIONAL CONGRESS OF EMPLOYERS, INC., and DOES 1-10, | |
| Defendants. | |

Come now the Plaintiffs, through counsel, and for their Complaint in the above-captioned matter allege as follows:

1

## SUMMARY OF CLAIM

1.     In February 2016, Plaintiff Charles Butler was sold health insurance that became effective on April 1. He paid monthly premiums faithfully, which were withdrawn directly from his checking account. In August 2016, he was diagnosed with testicular cancer and began incurring medical costs including surgery. In February 2017, he was diagnosed with metastasis to his lungs. Defendants did not pay any of his medical bills as required by the insurance policy. Then, on the last day of February, his coverage was non-renewed without the required notice, contrary to express representations, and in violation of the policy itself, leaving him uninsured with tens of thousands of dollars in overdue medical bills just as he was to begin chemotherapy. This treatment of Mr. Butler constitutes breach of contract, violation of the Unfair Claims Settlement Practices Act, fraudulent inducement, deceit, constructive fraud, negligent misrepresentation, violation of the Montana Consumer Protection Act and malice.

## PARTIES

2.     Plaintiffs Charles and Chole Butler are husband and wife and citizens and residents of Richland County, State of Montana.

3.     Defendant Unified Life Insurance Company ("Unified Life") is a Texas corporation and insurance company with its principal offices in Kansas that is licensed to do business in the State of Montana. Unified Life underwrote and

insured the risk associated with the health insurance policy that is at issue in this case. Upon information and belief, Unified Life contracted with the other named Defendants to market, sell, and administer the health insurance policy that is at issue in this case.

4.     Health Plan Intermediaries Holdings, LLC, D/B/A Health Insurance Innovations and Health Insurance Innovations, Inc. are related Delaware corporations with their principal offices in Florida that market health insurance policies and perform billing for health insurance companies under the name Health Insurance Innovations ("HII"). On information and belief, HII participated in marketing to Mr. Butler the health insurance policy that is at issue in this case, collected the monthly premiums from Mr. Butler's bank account, and coordinated the activity of the Defendants with respect to Mr. Butler's health insurance coverage. HII bills itself on its website as "a leading developer and administrator of affordable, web-based individual health insurance plans and ancillary products." HII was previously licensed as an insurance producer by the State of Montana but its license has been suspended.[1]

5.     National Brokers of America, Inc., ("NBoA") is an Ohio corporation with its principal offices in Pennsylvania operating as an insurance brokerage firm

---

[1] HII is not accredited by the Better Business Bureau and has a BBB rating of "F." https://www.bbb.org/west-florida/business-reviews/health-insurance/health-insurance-innovations-in-tampa-fl-90072827.

that distributes health insurance products to consumers and sold Mr. Butler the health insurance policy that is at issue in this case. NBoA is not licensed as an insurance producer or administrator by the State of Montana.

6.     Allied National, Inc., ("Allied National") is a Missouri Corporation with its principal offices in Kansas that contracts as a third-party administrator to handle health insurance claims for Unified Life and was responsible for handling the claims of Mr. Butler that are at issue in this case.

7.     The National Congress of Employers, Inc. ("NCE") is a Delaware corporation that participates in the marketing of health insurance policies and, on information and belief, participated in the marketing of Mr. Butler's health insurance coverage.[2]

8.     Does 1 through 10 are parties presently unknown that were involved in the misrepresentations regarding the health insurance policy sold to Mr. Butler, failure to timely pay any of Mr. Butler's claims and/or the decision to terminate and non-renew Mr. Butler's health insurance coverage without the required notice.

## JURISDICTION

9.     Jurisdiction in this Court is based on diversity of citizenship because the Plaintiffs are citizens of Montana, all Defendants are citizens of other states,

---

[2] NCE is not accredited by the Better Business Bureau and has a BBB rating of "F." https://www.bbb.org/new-york-city/business-reviews/associations/the-national-congress-of-employers-inc-in-garden-city-ny-161160

and the amount in controversy exceeds $75,000 exclusive of interests and costs. 28 U.S.C. § 1332.

## VENUE

10.     Venue is appropriate in the Billings Division because the Defendants sold health insurance to Plaintiff in this Division, wrongfully failed to pay medical expenses due under the policy in this Division, and wrongfully terminated Plaintiff Charles Butler's coverage in this Division. 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

11.     Plaintiff Charles Butler is a 34-year-old truck driver. Because he was changing jobs and going to work for a company that did not offer health insurance, his wife, Plaintiff Chole Butler, requested health insurance information, on information and belief, through a website operated by HII. On or about February 27, 2016, Mr. Butler received a telephone call at his home from William Corchado who was, on information and belief, acting as an agent of NBoA and the other named Defendants. He sold Mr. Butler a Unified Life health insurance policy that he represented to have 80/20 coverage and a $5,000 deductible. He arranged for premium payments to be automatically withdrawn from Mr. Butler's Wells Fargo checking account. Mr. Corchado's Unified Life Agent Number was E705000013. His email was william@nboainc.com. The policy he sold to Mr. Butler was Unified Life's "Premiere" policy ("the Policy").

12.    Mr. Corchado did not tell Mr. Butler that his health insurance policy was subject to cancellation or non-renewal if he got sick. Mr. Butler had no reason to believe that to be the case and he would not have bought the Policy if he knew or believed that to be true. Defendants and each of them, through Corchado, told Mr. Butler that the Policy provided major medical "Obamacare" health insurance coverage and would pay his medical bills, subject to the co-insurance and deductible terms. Mr. Corchado said higher priced "Obamacare" policies were "scams." Mr. Butler agreed to purchase the health insurance coverage from Defendants based on Mr. Corchado's representations. Mr. Butler did not fill out or sign an application form; rather, Defendants filled out the application for him, without showing it to him, and hand printed his "signature" on the form.

13.    Mr. Butler's coverage became effective April 1, 2016, with a termination date of February 28, 2017. Defendants did not provide Mr. Butler with a copy of his policy but provided him only with a Unified Life Premiere health insurance card with Member ID 100197170. The reverse side of the card stated that it was an NCE membership card, although Mr. Butler did not knowingly become a member of NCE, received no services of any kind from NCE, and did not know what NCE was. The reverse side of the insurance card also directed Mr. Butler to send claims to Allied National and to direct "billing & non-claims related questions" to HII.

14.    In August 2016, Mr. Butler was diagnosed with testicular cancer. He underwent surgery at that time and received other medical care. The providers submitted medical bills to Allied National, but Allied National did not pay the bills.

15.    On or about September 8, 2016, Mr. Butler's wife Chole called Allied National three times to ask why the medical bills were not being paid. Each time the phone rang indefinitely without being answered. Following his diagnoses, Mr. Butler received medical care from a dozen providers. None of their bills were paid.

16.    On or about January 26, 2017, Mrs. Butler called Allied National regarding why none of Mr. Butler's medical bills had been paid. A representative told Mrs. Butler that Allied National was still missing records. Mrs. Butler then contacted the Great Falls Clinic, Esprit Health Clinic in Sidney, Montana, and other providers who all advised that any records requested by Allied National had been forwarded to Allied National immediately.

17.    In February 2017 Mr. Butler was told that his testicular cancer had metastasized to his lungs and chemotherapy was ordered.

18.    On or about February 23, 2017, the Butlers received on their home answering machine a recorded message stating:

> My name is William. I'm giving you a call from Express Benefits Plus in regards to your current health insurance policy that you had through Health Insurance Innovations and Premier Health. Your policy is set to expire at the end of this week. You need to give us a

call back as soon as possible to avoid any lapse in coverage. My number is 860-352-9199…. Please give us a call back as soon as possible to avoid any lapse in coverage.[3]

Mrs. Butler called William Corchado at NBoA and spoke with him that night. Mr. Corchado told Mrs. Butler (and through her, Mr. Butler) that he would personally make sure that the policy would be renewed on or before February 28, 2017, that Mr. Butler would be "grandfathered" in and "automatically renewed" for the same premium and that his automatic renewals would recur indefinitely. Mr. and Mrs. Butler were greatly relieved to hear this and justifiably believed and relied on Mr. Corchado's representation.

19.    On information and belief, unbeknownst to Mr. and Mrs. Butler, without notice to or request of Mr. Butler, contrary to Montana law,[4] contrary to the policy language itself, and contrary to the express promises of William Corchado, Mr. Butler's policy lapsed and was not renewed as of February 28, 2017.

20.    On or about March 1, 2017, a representative of MD Anderson Cancer Treatment Center in Houston, Texas contacted Mr. Butler to tell him that they had contacted his insurance company and were advised that he no longer had health insurance and that MD Anderson therefore would be unable to further assist him.

---

[3] On information and belief, Express Benefits Plus is a d/b/a for NBoA and Premier Health refers to the Unified Life health insurance "Premier" policy that HII markets and that was sold through NBoA to Mr. Butler.
[4] Non-renewal of a disability (health) insurance policy requires 90 days notice unless for non-payment of premium or misrepresentation. Section 33-22-121, MCA.

The same day, Mrs. Butler called NBoA again. She was told that William Corchado did not have the authority to renew Charles' coverage, that the coverage was not renewable and that she must contact HII. Mrs. Butler called NBoA two additional times attempting to speak to William Corchado but was not allowed to speak with him. Two different assistants advised Mrs. Butler that NBoA had stopped working with HII in the summer of 2016 and that she must contact HII directly. Mrs. Butler asked that William Corchado call her back, but the return call never came.

21.     Mr. Butler began chemotherapy under the supervision of the Billings Clinic at the Sidney Health Care Cancer Wing but had no health insurance coverage during the month of March and the bills for his life-saving medical care mounted.[5]

22.     Because of Defendants' failure to pay Mr. Butler's medical bills for many months, Butlers filed a complaint with the Montana Insurance Department, which forwarded the complaint to Unified Life. Unified Life received it on or about March 6, 2017.

23.     Also, in early March 2017, Butlers consulted the undersigned legal counsel John Morrison. Morrison contacted NBoA on or about March 9 and asked for an explanation of why Mr. Butler's coverage was non-renewed without notice

---

[5] Butlers were able in March to secure coverage through Healthcare.gov with Health Care Service Corporation d/b/a Blue Cross Blue Shield of Montana, effective April 1, 2017.

and contrary to Corchado's representation and why none of the medical bills had been paid. About one week later, Allied National began issuing Explanations of Benefits (EOBs) excluding certain charges, steeply discounting other billed charges, charging the discounted amounts against the $5,000 deductible, and then paying certain charges after the deductible, subject to the 20% co-insurance. Other bills remain unpaid and have yet to be addressed in any EOB.

24.    The insurance card issued to Mr. Butler states that his coverage is provided "**Network Access**" within the MultiPlan Complementary Network. In a network, the patient is protected from balance billing by the provider. However, on information and belief, the discounting applied by Allied National to Mr. Butler is not provided by any networking agreement with providers but by a pricing guide called Data iSight, which Allied National relies on for its determination of "usual and customary" charges. For example, Allied National discounted a general anesthesia charge of $1,026.00 to $258.11. This discount prolonged Mr. Butler's $5,000 deductible by allowing only $258.11 to be charged against it, even though he was responsible for the full charge. Once the allowed charges finally reached the level of the deductible, Mr. Butler nevertheless continued to be exposed not only to his co-insurance percentage of the allowed charge but also to balance billing above the steeply discounted allowed charge. The Policy defines "Reasonable and Customary Charge" (on page 9) as "the usual charge made for

necessary medical services, drugs, supplies, procedures or treatment generally furnished for cases of comparable severity and nature in the geographical area in which the services, drugs, supplies, procedures or treatment are furnished." While the policy states that Unified Life relies on "standard industry reference sources," the use of prices set by Data iSight was not disclosed to Mr. Butler, was contrary to representations made to Mr. Butler by Defendants and was contrary to the language of the Policy. In addition to the failure to disclose the use of Data iSight, the prices of Data iSight were unreasonably, deceptively and fraudulently low and did not reflect usual rates for the services in question as defined by the Policy or by any other reasonable standard.[6] The Policy also failed to comply with § 33-15-308, MCA, by containing no description of the database reasonably calculated to inform Mr. Butler (had he been given the Policy to read) of the method used to determine the usual charges in the geographic area and by containing no statement informing Mr. Butler that he would be subject to balance billing for the difference between the provider charge and the "reasonable and customary" charge.

25.    The Policy (on page 25) contains an "Extension of Benefits" clause, which provides that, if a covered sickness that commences during the policy period

---

[6] The use of Data iSight pricing was found by the New York Attorney General in 2012 to be a fraudulent business act and deceptive business act or practice in violation of EL § 63(12) and GBL § 349(a). http://www.catalystgroupconsultants.com/wp-content/uploads/2016/04/Tab_H .pdf  at 4, ¶10.

causes the policyholder to become totally disabled, policy benefits will continue until the disability ends. Mr. Butler became totally disabled by his cancer and associated treatment, was found to be totally disabled by his physician and qualified for AFLAC disability benefits based on his total disability, all in February 2017 before his Policy expired. Despite having months of medical bills showing Mr. Butler's treatment for cancer, which became metastatic, Defendants terminated Mr. Butler's coverage without taking any steps to determine if Mr. Butler was totally disabled for purposes of triggering Extension of Benefits under the policy and without even informing Mr. Butler of the Extension of Benefits provision of the Policy.

## COUNT I
### BREACH OF CONTRACT

26.   Plaintiffs incorporate by reference all prior allegations.

27.   Mr. Butler had a health insurance contract with Unified Life by which Unified Life agreed to pay for Mr. Butler's medical expenses, subject to the 80/20 co-insurance and $5,000 deductible, and Mr. Butler agreed to allow Unified Life to withdraw premium payments every month out of his Wells Fargo checking account.

28.   Mr. Butler fully performed his part of the contract by paying his premiums in full and on time.

29.     Unified Life breached the contract by failing for months to pay for the medical bills that Mr. Butler incurred when he developed cancer and only commencing partial payment after being contacted and questioned by the undersigned legal counsel and the Montana Insurance Department.

30.     Unified Life breached the contract by discounting medical bills to amounts lower than the "Reasonable and Customary Charge" as defined in the policy, by failing to disclose to Mr. Butler the methodology behind their discounting, by failing to disclose to Mr. Butler that he would be subject to balance billing by providers, and by exposing Mr. Butler to significant balance billing.

31.     Unified Life breached the contract by terminating coverage on February 28, 2017, without notice, contrary to the express representations of Mr. Corchado, and despite the fact that Mr. Butler had become totally disabled by his cancer and qualified for Extension of Benefits.

32.     As a direct and legal result of Unified Life's breaches of contract, Plaintiff Mr. Butler suffered the loss of his contract benefits, other consequential economic damages, attorney fees and costs.

## COUNT II
### UNFAIR CLAIMS SETTLEMENT PRACTICES

33.     Plaintiffs incorporate by reference all prior allegations.

34.     Unified Life and the other Defendants are insurers within the meaning of §§ 33-18-242 and 33-1-201(6), MCA.

35.     By engaging in the conduct alleged herein, Defendants misrepresented pertinent facts and insurance policy provisions relating to Mr. Butler's health insurance, refused to pay claims without conducting a reasonable investigation based upon all available information, failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed, and neglected to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear, in violation of § 33-18-201(1), (4), (5), and (6), MCA, the Montana Unfair Claims Settlement Practices Act (UCSPA).

36.     Defendants and each of them committed these tortious acts in concert with each other and pursuant to a common design with each other, knew that each other's conduct constituted a breach of duty and gave substantial assistance or encouragement to each other. Defendants and each of them further gave substantial assistance to each other in accomplishing a tortious result and the conduct of each of them, separately considered, constitutes a breach of duty to Mr. Butler.

37.     As a direct and legal result of Defendants' violations of the UCSPA, Mr. Butler has suffered and continues to suffer economic and non-economic damages and Mrs. Butler has suffered a loss of consortium entitling them to the full measure of relief under § 33-18-242, MCA.

## COUNT III
### FRAUDULENT INDUCEMENT

38.     Plaintiffs incorporate by reference all prior allegations.

39.     NBoA and the other Defendants, acting through NBoA salesman William Corchado, during the telephone call he placed to Mr. Butler on or about February 27, 2016, induced Mr. Butler to purchase the policy by telling him that the Policy was a major medical "Obamacare" type policy and thereby leading him to believe that it was compliant with the Affordable Care Act. Corchado deliberately concealed from Mr. Butler that the Policy excluded preexisting conditions, would not be renewed at the end of the 11 month policy period if he became ill, would subject him to the ACA's penalty for not purchasing insurance, was not within MultiPlan or any other PPO network, and would pay only a portion of his medical bills leaving him with thousands of dollars in balance billed medical expenses. Corchado's representation that this was an "Obamacare" type policy was material and false and NBoA and the other Defendants knew it was material and false. The facts concealed by Corchado were also material facts which NBoA and the other Defendants knew were material and knew were being concealed by NBoA.

40.     Mr. Butler did not know the aforedescribed representations by Mr. Corchado and the Defendants were false or of the concealed material facts and he justifiably relied on the information given to him by Corchado and the Defendants

as being true and accurate. Mr. Butler was not shown the Policy or even his signature page, which was filled out by NBoA, Mr. Butler has no education or experience in health insurance, and Mr. Corchado held himself out as a knowledgeable and skilled insurance professional. Further, the insurance card sent to Mr. Butler confirmed that he was covered by the MultiPlan network (and therefore would not be subject to balance billing). As a direct and legal result of the fraudulent inducement and Mr. Butler's justifiable and rightful reliance on the misrepresentations, he suffered economic and non-economic damages because he was left with thousands of dollars of medical bills and his insurance coverage terminated and was not renewed just as he was to begin chemotherapy and Mrs. Butler has suffered a loss of consortium.

41.    Defendants and each of them committed these tortious acts in concert with NBoA and pursuant to a common design with NBoA, knew that NBoA's conduct constituted a breach of duty and gave substantial assistance or encouragement to NBoA so to conduct itself. Defendants and each of them further gave substantial assistance to NBoA in accomplishing a tortious result and the conduct of each of them, separately considered, constitutes a breach of duty to Mr. Butler.

42.     As a direct and legal result of the Defendants' joint tortious conduct, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

## COUNT IV
### DECEIT

43.     Plaintiffs incorporate by reference all prior allegations.

44.     NBoA and the other Defendants, acting through NBoA salesman William Corchado, during the telephone call he placed to Mr. Butler on or about February 27, 2016, induced Mr. Butler to purchase the policy by telling him that the Policy was a major medical "Obamacare" type policy and thereby leading him to believe that it was compliant with the Affordable Care Act. Corchado deliberately concealed from Mr. Butler that the Policy excluded preexisting conditions, would not be renewed at the end of the 11 month policy period if he became ill, would subject him to the ACA's penalty for not purchasing insurance, was not within MultiPlan or any other PPO network, and would pay only a portion of his medical bills leaving him with thousands of dollars in balance billed medical expenses. Corchado's representation that this was an "Obamacare" type policy was material and false and NBoA and the other Defendants knew it was material and false. The facts concealed by Corchado were also material facts which NBoA and the other Defendants knew were material and knew were being concealed by NBoA.

17

45.    Mr. Butler did not know the aforedescribed representations by NBoA about the health insurance coverage he was being sold were false or of the concealed material facts and justifiably relied on the information given to him by NBoA as being true and accurate. Mr. Butler was not provided with a copy of the Policy or even his signature page, which was filled out by NBoA, Mr. Butler has no education or experience in health insurance, and Mr. Corchado held himself out as a knowledgeable, skilled insurance professional. Further, the insurance card sent to Mr. Butler confirmed that he was covered by the MultiPlan network (and therefore would not be subject to balance billing.) As a direct and legal result of the deceit and Mr. Butler's justifiable and rightful reliance on the deceitful misrepresentations, he suffered economic and non-economic damages because he was left with thousands of dollars of medical bills and his insurance coverage terminated and was not renewed just as he was to begin chemotherapy and Mrs. Butler has suffered a loss of consortium.

46.    NBoA and the other Defendants, acting through NBoA salesman William Corchado, during a telephone call on or about February 23, 2017, told Mrs. Butler (and through her Mr. Butler) that he would ensure that the Butler's coverage did not lapse, that they would be automatically renewed without a premium increase, that there would be no gap in coverage, that Mr. Butler's cancer condition would be "grandfathered in," and that Mr. Butler's Policy would be

renewed each year, all of which statements were material and false and which NBoA and the other Defendants knew were material and false.

47.    Mr. Butler did not know the aforedescribed representations by NBoA about renewal of his coverage were false and justifiably relied on the information given to him by NBoA as being true and accurate. Mr. Corchado had sold the Policy to Mr. Butler and Mr. Butler believed that he could be trusted as an insurance agent. Mr. Butler had never seen the Policy or even his signature page, which was filled out by NBoA, Mr. Butler has no education or experience in health insurance, Mr. Corchado held himself out as a knowledgeable and skilled insurance professional and Mr. Butler had seen news reports leading him to believe that Mr. Corchado's representations were consistent with the ACA. Mr. Butler was further justified in believing Mr. Corchado because of the above-quoted telephone message that Corchado left on the answering machine of Butlers earlier that day stating that they should call him to avoid a lapse in coverage. As a direct and legal result of the deceit and Mr. Butler's justifiable and rightful reliance on the deceitful misrepresentations, he suffered economic and non-economic damages because his insurance coverage terminated and was not renewed just as he was to begin chemotherapy and Mrs. Butler has suffered a loss of consortium.

48.    Defendants committed these tortious acts in concert with NBoA and pursuant to a common design with NBoA, knew that NBoA's conduct constituted a

breach of duty and gave substantial assistance or encouragement to NBoA so to conduct itself. Defendants and each of them further gave substantial assistance to NBoA in accomplishing a tortious result and the conduct of each of them, separately considered, constitutes a breach of duty to Mr. Butler.

49.    As a direct and legal result of the Defendants' joint tortious conduct, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

## COUNT V
### CONSTRUCTIVE FRAUD

50.    Plaintiffs incorporate by reference all prior allegations.

51.    NBoA and the other Defendants, acting through NBoA salesman William Corchado, during the telephone call he placed to Mr. Butler on or about February 27, 2016, induced Mr. Butler to purchase the policy by telling him that the Policy was a major medical "Obamacare" type policy and thereby leading him to believe that it was compliant with the Affordable Care Act.    Corchado deliberately concealed from Mr. Butler that the Policy excluded preexisting conditions, would not be renewed at the end of the 11 month policy period if he became ill, would subject him to the ACA's penalty for not purchasing insurance, was not within MultiPlan or any other PPO network, and would pay only a portion of his medical bills leaving him with thousands of dollars in balance billed medical expenses. Corchado's representation that this was an "Obamacare" type policy was

material and false and NBoA and the other Defendants knew it was material and false. The facts concealed by Corchado were also material facts which NBoA and the other Defendants knew were material and knew were being concealed by NBoA.

52.     Mr. Butler did not know the aforedescribed representations by NBoA about the health insurance coverage he was being sold were false or of the concealed material facts and justifiably relied on the information given to him by NBoA as being true and accurate. Mr. Butler was not provided with a copy of the Policy or even his signature page, which was filled out by NBoA, Mr. Butler has no education or experience in health insurance, and Mr. Corchado held himself out as a knowledgeable and skilled insurance professional. Further, the insurance card sent to Mr. Butler confirmed that he was covered by the MultiPlan network (and therefore would not be subject to balance billing.) As a direct and legal result of the constructive fraud and Mr. Butler's justifiable and rightful reliance on the misrepresentations, he suffered economic and non-economic damages because he was left with thousands of dollars of medical bills and his insurance coverage terminated and was not renewed just as he was to begin chemotherapy and Mrs. Butler has suffered a loss of consortium.

53.     NBoA and the other Defendants, acting through NBoA salesman William Corchado, during a telephone call on or about February 23, 2017, told

Mrs. Butler (and through her Mr. Butler) that he would ensure that the Butler's coverage did not lapse, that they would be automatically renewed without a premium increase, that there would be no gap in coverage, that Mr. Butler's cancer condition would be "grandfathered in," and that Mr. Butler's would be renewed each year, all of which statements were material and false.

54.    Mr. Butler did not know the aforedescribed representations by NBoA and the other Defendants about renewal of his coverage were false and justifiably relied on the information given to him by NBoA as being true and accurate. Mr. Corchado had sold the Policy to Mr. Butler and Mr. Butler believed that he could be trusted as an insurance agent. Mr. Butler had never seen the Policy or even his signature page, which was filled out by NBoA, Mr. Butler has no education or experience in health insurance, and Mr. Corchado held himself out as a knowledgeable insurance professional. Mr. Butler also had seen news reports leading him to believe that Mr. Corchado's representations were consistent with the ACA. Mr. Butler was further justified in believing Mr. Corchado because of the above-quoted telephone message that Corchado left on the answering machine of Butlers earlier that day stating that they should call him to avoid a lapse in coverage. As a direct and legal result of the deceit and Mr. Butler's justifiable and rightful reliance on the misrepresentations, he suffered economic and non-economic damages because his insurance coverage terminated and was not

renewed just as he was to begin chemotherapy and Mrs. Butler has suffered a loss of consortium.

55.    Defendants committed these tortious acts in concert with NBoA and pursuant to a common design with NBoA, knew that NBoA's conduct constituted a breach of duty and gave substantial assistance or encouragement to NBoA so to conduct itself. Defendants and each of them further gave substantial assistance to NBoA in accomplishing a tortious result and the conduct of each of them, separately considered, constitutes a breach of duty to Mr. Butler.

56.    As a direct and legal result of the Defendants' joint tortious conduct, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

## COUNT VI
### NEGLIGENT MISREPRESENTATION

57.    Plaintiffs incorporate by reference all prior allegations.

58.    The aforedescribed representations by Defendant NBoA and the other Defendants constituted negligent misrepresentation.

59.    As a direct and legal result of Defendants' negligent misrepresentation, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

60.    Defendants committed these tortious acts in concert with NBoA and pursuant to a common design with NBoA, knew that NBoA's conduct constituted a

breach of duty and gave substantial assistance or encouragement to NBoA so to conduct itself. Defendants and each of them further gave substantial assistance to NBoA in accomplishing a tortious result and the conduct of each of them, separately considered, constitutes a breach of duty to Mr. Butler.

61.    As a direct and legal result of the Defendants' joint tortious conduct, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

## COUNT VII
### BREACH OF INSURANCE AGENT ABSOLUTE DUTY

62.    Plaintiffs incorporate by reference all prior allegations.

63.    In the telephone conversations between Mr. Corchado and Mr. Butler on or about February 27, 2016 and the telephone conversation on or about February 23, 2017, NBoA failed to procure specific insurance that Mr. Corchado was instructed to procure and promised that he would procure and NBoA thereby violated its absolute duty to procure such insurance.

64.     As a direct and legal result of NBoA's breach of absolute duty, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

65.    Defendants committed these tortious acts in concert with NBoA and pursuant to a common design with NBoA, knew that NBoA's conduct constituted a breach of duty and gave substantial assistance or encouragement to NBoA so to

24

conduct itself. Defendants and each of them further gave substantial assistance to NBoA in accomplishing a tortious result and the conduct of each of them, separately considered, constitutes a breach of duty to Mr. Butler.

66.     As a direct and legal result of the Defendants' joint tortious conduct, Mr. Butler suffered significant economic and non-economic injuries and damages and Mrs. Butler has suffered a loss of consortium.

## COUNT VIII
### PROMISSORY ESTOPPEL

67.     Plaintiffs incorporate by reference all prior allegations.

68.     NBoA and the other Defendants made promises that were clear and unambiguous in their terms. To wit: During the call on or about February 27, 2016, that the Policy was a major medical "Obamacare" policy that was compliant with the Affordable Care Act, and by virtue of his concealment of these material facts, that the Policy did not exclude preexisting conditions, could be renewed, would be within the MultiPlan network (and therefore not subject to balance billing), and would allow him to avoid paying the ACA's penalty for not purchasing insurance; and during the call on or about February 23, 2017, that NBoA would ensure that the Butler's coverage did not lapse, that it would be automatically renewed without a premium increase, that there would be no gap in coverage, that Mr. Butler's cancer condition would be "grandfathered in," and that Mr. Butler's policy would be renewed each year.

69.    Mr. Butler relied on the promises in the call on or about February 27, 2016, in his decision to purchase the Policy. Mr. Butler relied on the promises in the call on or about February 23, 2017, in believing that he had coverage for his upcoming treatment and in not obtaining other coverage.

70.    It was reasonable and foreseeable to Defendants that Mr. Butler would rely on the promises made in the 2016 call because Mr. Butler has no education or experience in health insurance, and Mr. Corchado held himself out as a knowledgeable and skilled insurance professional, Mr. Butler was not provided with a copy of the Policy or even his signature page, which was filled out by NBoA, and the insurance card sent to Mr. Butler confirmed that he was covered by the MultiPlan network (and therefore would not be subject to balance billing.) It was reasonable and foreseeable to Defendants that Mr. Butler would rely on the promises made in the 2017 call because Mr. Corchado had sold the Policy to Mr. Butler and Mr. Butler believed that he could be trusted as an insurance agent, Mr. Butler had never seen the Policy or even his signature page, which was filled out by NBoA, Mr. Butler has no education or experience in health insurance, Mr. Corchado held himself out as a knowledgeable insurance professional and Mr. Butler had seen news reports leading him to believe that Mr. Corchado's representations were consistent with the ACA. Mr. Butler was further justified in believing Mr. Corchado because of the above-quoted telephone message that

Corchado left on the answering machine of Butlers earlier that day stating that they should call him to avoid a lapse in coverage.

71.     As a result of his reliance on these promises of Defendants, Mr. Butler was injured, incurring significant uncovered medical expenses, and Defendants should therefore be estopped from denying coverage for those expenses.

## COUNT IX
### EQUITABLE ESTOPPEL

72.     Plaintiffs incorporate by reference all prior allegations.

73.     The representations made by Defendants in the 2016 and 2017 calls, the insurance card sent to Mr. Butler, the HII website, and other communications constitute conduct, acts, language, or silence amounting to a representation that the health insurance sold to Mr. Butler was major medical "Obamacare" health insurance. Defendants concealed material facts including that the Policy would be automatically canceled without notice, that bills would go unpaid for months, that Mr. Butler was not in a MultiPlan provider network that protected him from balance billing, that Defendants would apply steep discounts to the medical bills submitted by providers and expose him to tens of thousands of dollars of balance billing and that Mr. Butler would be penalized under the ACA for not having adequate insurance. Defendants also concealed and failed disclose to Mr. Butler the database used to determine allowable charges and the fact that he would be balance billed by the providers, both of which are required by § 33-15-308, MCA.

Defendants knew these facts at the time the representations were made and the material facts concealed or the circumstances were such that knowledge of these facts is necessarily imputed to them. However, the truth concerning these facts was unknown to Mr. Butler at the time they were acted upon by him. Defendants engaged in such conduct with the intention, or at least the expectation, that it would be acted upon by Mr. Butler, or under circumstances both natural and probable that it will be so acted upon. Mr. Butler did rely on Defendants' conduct (misrepresentation and concealment) and was led to act upon it in such a manner as to change his position for the worse as described in detail above, and Defendants should therefore be estopped from denying coverage for those expenses.

## COUNT X
### CONSUMER PROTECTION ACT

74.     Plaintiffs incorporate by reference all prior allegations.

75.     The Montana Consumer Protection Act (MCPA) prohibits unfair and deceptive Practices in any trade or commerce. Section 30-14-103, MCA. The conduct of Defendants and each of them as described above violates the MCPA and constitutes unfair and deceptive acts in at least the following ways:

a.     Falsely telling Mr. Butler in February 2016 that the Policy was a major medical "Obamacare" policy and concealing from him that the Policy:

1)     was not compliant with the Affordable Care Act;

2)     excluded preexisting conditions;

   3)  would not be renewed if he became ill;

   4)  would not be within MultiPlan or any other PPO network;

   5)  would subject him to balance billing;

   6)  would steeply discount medical charges well below the usual rate in the geographic area and pay for only a portion of his medical bills; and

   7)  would subject him to the ACA's penalty for not purchasing insurance;

  b.  Falsely telling Mr. Butler (through Mrs. Butler) in February 2017:

   1)  that his coverage would be renewed and would not lapse;

   2)  that he would be automatically renewed without a premium increase;

   3)  that there would be no gap in coverage;

   4)  that Mr. Butler's cancer condition would be "grandfathered in," and that Mr. Butler's Policy would be renewed each year.

  c.  Failing to pay Mr. Butler's medical expenses for months without explanation;

  d.  Forcing Butlers to seek help from an attorney and state regulators in order to get medical bills paid;

e.    Failing to do anything to determine whether Mr. Butler was disabled at the time of non-renewal, which would have and did entitle him to Extension of Benefits under the Policy;

f.    Steeply discounting provider charges far below the usual charges for the stated services in the geographic area;

g.    Failing to inform Mr. Butler that the providers' bills would not be paid by the insurer;

h.    Failing to inform Mr. Butler that he would be balance billed by the providers and provide to him a description of the database used to determine allowable charges, as required by § 33-15-308, MCA;

i.    Using the unreasonably discounted charges to prolong Mr. Butler's deductible;

j.    Exposing Mr. Butler to thousands of dollars in balance billing.

76.    Defendants' acts in violation of the MCPA were the direct and legal cause of injuries and damages to Mr. Butler, entitling him to actual losses, treble damages, other equitable relief, and their reasonable attorney's fees, pursuant to § 30-14-133, MCA.

## COUNT XI
### MALICE

77.    Plaintiffs incorporate by reference all prior allegations.

78.    The conduct of Defendants and each of them as described above constitutes actual fraud and actual malice within the meaning of § 27-1-221, MCA, entitling Plaintiffs to punitive damages for the sake of example and for the purpose of punishing the Defendants.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs Charles and Chole Butler respectfully request the following relief against Defendants:

a.    Payment of all Mr. Butler's medical expenses;

b.    Consequential economic losses;

c.    Non-economic damages, including emotional distress;

d.    Attorney fees;

e.    Treble damages for violation of the Consumer Protection Act;

f.    Prejudgment interest in the amount permitted by law;

g.    Punitive damages; and

h.    Costs of suit and such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38, F. R. Civ. P., the Plaintiffs hereby demand a trial by jury of the issues triable by right by jury.

DATED this 25th day of April, 2017.

By:   /s/ John M. Morrison
      John M. Morrison
      MORRISON SHERWOOD WILSON DEOLA PLLP
      *Attorney for Plaintiffs*