IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHARLES M. BUTLER, III and CHLOE BUTLER<br><br>                    Plaintiffs,<br><br>vs.<br><br>UNIFIED LIFE INSURANCE COMPANY; HEALTH PLANS INTERMEDIARIES HOLDINGS, LLC, doing business as Health Insurance Innovations, doing business as Health Insurance Innovations, Inc.; ALLIED NATIONAL, INC.; NATIONAL BROKERS OF AMERICA, INC.; THE NATIONAL CONGRESS OF EMPLOYERS, INC.; and DOES 1-10<br>                    Defendants. | CV 17-50-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION REGARDING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiffs Charles M. Butler, III and Chole Butler ("Plaintiffs") bring this action against Defendants Unified Life Insurance Company ("Unified Life"), Health Plan Intermediaries Holdings, LLC d/b/a Health Insurance Innovations, d/b/a Health Insurance Innovations, Inc. ("HII"), Allied National, Inc. ("Allied National"), National Brokers of America, Inc. ("NBoA"), and National Congress of Employers, Inc. ("NCE") relating to a health insurance policy Mr. Butler purchased in February 2016.

1

In their Second Amended Complaint, Plaintiffs assert claims for breach of contract, violation of the Unfair Claims Settlement Practices Act, fraudulent inducement, deceit, constructive fraud, negligent misrepresentation, breach of insurance agent duty, promissory estoppel, equitable estoppel, violation of the Montana Consumer Protection Act, common law bad faith, negligence, negligence *per se*, breach of fiduciary duty, and malice.  (Doc. 47.)

Presently before the Court is Defendants Unified Life and Allied National's Motion to Dismiss, which has been joined, in part, by Defendants HII and NCE.[1] (Doc. 50, 51, 54.)  The Motion has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and is fully briefed and ripe for the Court's review.  (Docs. 52, 55, 58, 64, 67.)

Having considered the parties' submissions, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**.

I.    **BACKGROUND**

Plaintiffs allege Plaintiff Chole Butler requested health insurance information for her husband through a website operated by HII.  (Doc. 47 at ¶ 11.) Thereafter, Plaintiff Charles Butler was contacted by William Corchado, who was

---

[1] Unified Life and Allied National move to dismiss Counts VII, X-XIV, and the claims of Chole Butler.  (Doc. 50.)  HII and NCE join in the motion only with respect to Counts VII and X, and the claims of Chole Butler.  (Doc. 55.)

allegedly acting as an agent of NBoA and the other named Defendants.  Mr.

Corchado sold Mr. Butler a Unified Life health insurance policy.  (*Id.*)  The policy

had an effective date of April 1, 2016, and termination date of February 28, 2017.

(*Id.* at ¶ 13.)

Plaintiffs allege that Mr. Corchado represented the policy had 80/20

coverage, a $5,000 deductible, and provided major medical "Obamacare" health

insurance coverage.  (*Id.* at ¶¶ 11-12.)  Plaintiffs allege that Mr. Corchado did not

tell Mr. Butler that the policy was subject to cancellation or non-renewal if he got

sick.  (*Id.* at ¶ 12.)

After purchasing the policy, Mr. Butler received an insurance card which

stated that it was an NCE membership card.  The card instructed Mr. Butler to send

claims to Allied National, and direct "billing & non-claims related questions" to

HII.  (*Id.*)

In August 2016, Mr. Butler was diagnosed with testicular cancer, and began

incurring medical costs.  (Doc. 47 at ¶ 14.)  Plaintiffs allege that although the

providers submitted medical bills to Allied National, none of the bills were paid.

(*Id.* at 14-15.)  He was later diagnosed with metastasis in his lungs in February

2017, and chemotherapy was ordered.  (*Id.* at ¶ 17.)

On or about February 23, 2017, Plaintiffs received a message on their home

answering machine advising them that the insurance policy was set to expire, and

3

they needed to call back to avoid any lapse in coverage.  (Doc. 47 at ¶ 18.)  Mrs.

Butler called Mr. Corchado that night and spoke with him.  (*Id.*)  Plaintiffs claim

Mr. Corchado assured them he would personally make sure the policy would be

renewed, and that Mr. Butler would be "grandfathered in."  (*Id.*)  Contrary to these

representations, however, Plaintiffs allege the policy lapsed and was not renewed

as of February 28, 2017, without further notice to Mr. Butler.  (*Id.* at ¶ 19.)

Plaintiffs allege the Defendants improperly terminated Mr. Butler's coverage under

the terms of the policy.  (*Id.* at ¶ 25.)

On March 1, 2017, Plaintiffs were contacted by a representative of MD

Anderson Cancer Treatment Center in Houston, Texas, who told them MD

Anderson could not treat Mr. Butler because he no longer had health insurance.

(*Id.* at ¶ 20.)  Therefore, Mr. Butler began chemotherapy under the supervision of

the Billings Clinic at the Sidney Health Care Cancer Wing, but had no health

insurance coverage for the month of March 2017.  (*Id.* at ¶ 21.)  Plaintiffs were

able to obtain coverage through a different insurer starting on April 1, 2017.  (*Id.* at

¶ 21, n.5.)

After Plaintiffs filed a complaint with the Montana Insurance Department in

March 2017, Allied National began issuing Explanations of Benefits ("EOBs").

(Doc. 47 at ¶¶ 22-23.)  Plaintiffs allege the EOBs improperly excluded certain

charges, steeply discounted other billed charges, charged the discounted amounts

against the $5,000 deductible, and paid limited charges after the deductible subject to the 20% co-insurance. (*Id.* at ¶ 23.) Plaintiffs also state they were exposed to balance billing above the steeply discounted allowed charges. (*Id.* at ¶ 24.)

Plaintiffs filed this action on April 25, 2017. (Doc. 1.) Thereafter, they filed an Amended Complaint (Doc. 9), alleging multiple claims against Defendants, including claims related to claims-handling under the Unfair Trade Practices Act (UTPA), common law tort claims for non-claims-handling conduct, a claim under the Montana Consumer Protection Act, and claims of loss of consortium by Mrs. Butler. *Id.* Defendants subsequently moved to dismiss certain counts and claims. (Docs. 3, 5, 19.)

On December 15, 2017, this Court issued Findings and Recommendations, which recommended that Defendants' motion to dismiss be granted in part and denied in part. (Doc. 40.) The Court recommended Plaintiffs be permitted to proceed with their common law tort claims to the extent they were based on non-claims-handling conduct. (*Id.* at 7-11.) The Court recommended dismissal with prejudice of Plaintiffs' claim under the Montana Consumer Protection Act. (*Id.* at 11-12.) The Court further recommended dismissal without prejudice of Mrs. Butler's claims for loss of consortium. (*Id.* at 12-14.) U.S. District Judge Susan P. Watters adopted the Findings and Recommendation without change on January 4, 2018. (Doc. 46.)

On January 5, 2018, Plaintiffs filed a Second Amended Complaint. (Doc. 47.)  In the Second Amended Complaint, Plaintiffs re-assert the same causes of action that appeared in the Amended Complaint.  Plaintiffs also add allegations to support additional common law tort claims under Counts II-VII and XI-XIV, and include more factual allegations regarding Mrs. Butler's derivative loss of consortium claims.

Defendants now move to dismiss Count VII of the Second Amended Complaint (breach of insurance agent absolute duty), Count X (violation of Consumer Protection Act), Counts XI-XIV (alternative common law claims relative to claims-handling), and all claims of Mrs. Butler.

## II.   ANALYSIS

### A.   Motions to Dismiss

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See e.g.*, *Wyler Summit P'ship v. Turner Broad. Sys., Inc.* 135 F.3d 658, 661 (9th Cir. 1998).  However, "bare assertions… amount[ing] to nothing more than a 'formulaic recitation of the elements'…for the purposes of ruling on a motion to dismiss are not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Such assertions do nothing more than state a legal conclusion, even if the conclusion is cast in the form of a factual allegation.  *Id*.

/ / /

/ / /

/ / /

7

### 1.    Count X:  Montana Consumer Protection Act

All Defendants move to dismiss Count X of the Second Amended Complaint, which asserts a claim under the Montana Consumer Protection Act. The Court previously dismissed Plaintiffs' Montana Consumer Protection Act claim with prejudice.  (Docs. 40 at 11-12; 46.)  Plaintiffs state they re-alleged the claim only for purposes of preserving the record, and do not oppose Defendants' motion on this point.  Accordingly, the Court recommends that Plaintiffs' claim in Count X be dismissed.

### 2.    Chole Butler's Loss of Consortium Claims

All Defendants move to dismiss the claims of Mrs. Butler, which would include her loss of consortium claims in Counts II – VII, and XI – XIV.  (Doc. 47 at ¶¶ 39, 44, 51, 58, 63, 66, 68, 83, 88, 93, 98.)  Mrs. Butler's loss of consortium claims were previously dismissed because Plaintiffs failed to plead any facts to support her claims, other than the conclusory statement that "Mrs. Butler has suffered a loss of consortium."  (Doc. 40 at 12-14.)  Nevertheless, the dismissals were without prejudice, since Plaintiffs may be able to allege sufficient facts to state a plausible claim for relief if given the opportunity to amend.  (Doc. 40 at 14.)

In the Second Amended Complaint, Plaintiffs provide additional factual allegations to support the loss of consortium claims.  (*Id.* at ¶ 26-27.)  Plaintiffs allege that both Mr. and Mrs. Butler suffered severe emotional distress because of

Defendants' conduct.  (*Id.* at ¶¶ 26-27.)  Plaintiffs state Mr. Butler experienced

significant anger, frustration, sadness, embarrassment and fear of losing his home,

belongings and vehicle due to his medical bills.  (*Id.* at ¶ 26.)  Plaintiffs further

allege Defendants' conduct caused Mr. Butler to become depressed and have

increased anxiety.  (*Id.*)  Mr. Butler sought treatment for the anxiety on more than

one occasion from his regular medical provider, and was prescribed medication

that was eventually increased.  (*Id.*)  Mr. Butler was also medically diagnosed with

depression, and his personality and temperament have allegedly been affected by

his experience.  (*Id.*)

Plaintiffs similarly assert Defendants' conduct caused Mrs. Butler

frustration, anger, anxiety, sadness, fear and embarrassment.  (*Id.* at ¶ 27.)  Mrs.

Butler reportedly sought medical attention and was provided medication for

depression and anxiety; and in June 2017, she was hospitalized for high blood

pressure and heart palpitations.  (*Id.*)  Plaintiffs also allege Mrs. Butler has suffered

from chronic digestive problems, fatigue, sleep disturbance, severe neck and

muscle tension, and daily headaches.  (*Id.*)  Plaintiffs claim their marriage has

suffered due to the emotional and financial strain of dealing with Defendants'

conduct.  (*Id.*)

These factual allegations are sufficient to cure the pleading deficiencies in

Plaintiffs' First Amended Complaint.  Nevertheless, the question remains whether

the Plaintiffs have alleged a cognizable claim for relief.  Defendants argue that the Montana Supreme Court has not recognized a loss of consortium claim in the absence of a physical injury, and has also not recognized such a claim by the spouse of an insured who seeks recovery under an insurance policy and/or under the UTPA.

With respect to the first argument, the Defendants are correct that the Montana Supreme Court has not expressly recognized a spousal loss of consortium claim in the absence of a physical injury.  But, as pointed out by Plaintiffs, the Montana Court has also not expressly limited application of the claim to instances of death or physical injury.  When presented with the issue, this Court believes the Montana Supreme Court will extend spousal consortium claims to cases involving mental injuries as well as physical injury.

The right of a spouse to recover for loss of consortium has long been recognized in Montana.  It was first recognized by the Montana Federal District Court in *Duffy v. Lipsman-Fulkerson & Co.*, 200 F.Supp. 71 (D. Mont. 1961).  There, the Court found that each spouse was "entitled to the comfort, companionship and affection of the other," and "[a]ny interference with these rights is a violation . . . of a legal right arising out of the marriage relation."  *Id.* at 74.

The Montana Supreme Court first established loss of consortium as a separate and distinct claim in *Bain v. Gleason*, 726 P.2d 1153 (Mont. 1986).  The Supreme Court agreed with *Duffy*, and stated that "consortium includes a legal right to the aid, protection, affection and society of the other spouse."  *Id.* at 1155.

Since that time, the Montana Supreme Court "has followed the national trend of expanding circumstances in which the law recognizes a cause of action for loss of consortium."  *Northern Pacific Ins. Co. v. Stucky*, 338 P.3d 56, 64 (Mont. 2014).  The claim was extended to a minor child's loss of consortium as a result of injury to a parent.  *Pence v. Fox*, 813 P.2d 431 (Mont. 1991).  It was later expanded to include loss of consortium by parents of an adult child in *Hern v. Safeco Ins. Co. of Ill.*, 125 P.2d 597 (Mont. 2005), and to an adult child of an injured parent in *Northern Pacific Ins. Co.*, 338 P.3d at 64.

While there is a division of authority on the issue,[2] several other states have also extended recovery for loss of consortium to cases involving mental injury alone.  One of the early courts to do so was the Massachusetts Supreme Court in

---

[2] *See, Slovensky v. Birmingham News Co.*, 358 So. 2d 474, 477 (Ala. Civ. App. 1978) (recovery of consortium is premised upon a physical injury suffered by the spouse); *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288 (Tex. 1994) (damages for loss of consortium cannot be awarded for harm to spouse that involves no physical injury).

*Agis v. Howard Johnson Company,* 355 N.E.2d 315 (Mass. 1976).  In *Agis*, the plaintiff brought an action for intentional or reckless infliction of severe emotional distress following her termination from employment.  Her husband also brought a loss of consortium claim based on the mental distress and anguish suffered by his wife.

In addressing the viability of the husband's consortium claim, the Massachusetts Court said there was no question such a claim may be brought by a husband or wife following a personal injury to a spouse caused by the negligence of a third party.  The Court found there was no reason for not also recognizing the claim in cases of emotional or mental injury, stating "the underlying purpose of such an action is to compensate for the loss of the companionship, affection, and sexual enjoyment of one's spouse, and it is clear that these can be lost as a result of psychological or emotional injury as well as from actual physical harm."  *Id.* at 320.

The California Supreme Court relied on *Agis* in reaching the same result in *Molien v. Kaiser Foundation Hospitals*, 27 Cal. 3d 915, 616 P.2d 813 (1980).  In *Molien*, a husband brought a claim for loss of consortium and emotional distress after his wife was incorrectly diagnosed with syphilis.  The plaintiff alleged that the faulty diagnosis created tension and hostility in their marriage, resulting in the initiation of dissolution proceedings.

12

In reversing dismissal of the consortium claim by the trial court, the California Supreme Court found that a loss of consortium claim could be based on a psychological injury.  The Court pointed out that "a person may become 'severely disabled' mentally no less than physically, and the resulting detriment to the individual's spouse is no less serious than if the disability were an impairment of mobility or other bodily function."  *Id*. at 931.

The Arizona Supreme Court reached the same conclusion in *Barnes v. Outlaw*, 964 P.2d 484 (Ariz. 1998).  The Arizona Court said that it had "long ago abandoned a skeptical attitude toward emotional injuries and have increasingly been willing to compensate those having validity."  *Id.* at 487.  The Court found no reason to treat emotional injuries any differently in the loss of consortium context.  The Court said the purpose of such a claim is to compensate for the loss of "love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations."  *Id.*  The Court found these elements can clearly be damaged from psychological injury as well as physical harm.  *Id.*

The Montana Supreme Court has relied on authority from the Arizona Supreme Court in establishing other claims for loss of consortium,[3] and there is no reason the Montana Court would not do so on this issue as well.  As noted by the

_____

[3] See *Keele v. St. Vincent Hospital & Health Care*, 852 P.2d 574, 577 (Mont. 1993), citing *Villareal v. State Dept. of Trans.,* 774 P.2d 213 (Ariz. 1989) to extend loss of consortium claims for loss of parental consortium.

13

foregoing authorities, there is simply no rationale for recognizing a claim for loss of consortium in connection with a physical injury, and not allowing recovering in the case of a mental injury.  Mental injuries can be no less debilitating and injurious to the marital relationship as a physical injury.

Moreover, the Montana Supreme Court has recognized that a mental injury can establish the basis for a loss of consortium claim in other circumstances.  In *Keele v. St. Vincent Hosp. & Health Care*, 852 P.2d 574 (Mont. 1993), the Montana Supreme Court considered the issue of whether a minor child's ability to recover for loss of consortium was limited to cases where the parent suffered an injury rendering him or her a quadriplegic.  *Id*. at 575.  The Court declined to impose such a requirement, but it established a heightened evidentiary standard for a minor's loss of parental consortium claim, which includes the following elements:

1) a third party tortuously causes the parent to suffer a serious, permanent and disabling mental or physical injury compensable under Montana law; and
2) the parent's ultimate condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed.

*Id.* at 577.

The Court went on to emphasize that the injury to the parent must be "compensable under Montana law." *Id.*   Using a mental injury as an example, the Court made clear that a minor can recover for loss of consortium for a parent's

14

mental injury only in the limited circumstances where the parent's injury would be compensable under Montana law. *Id.*

Therefore, while the Montana Supreme Court has never actually approved recovery for loss of consortium resulting solely from a mental injury, the Court has recognized that a mental injury can potentially form the basis for loss of parental consortium. There is no reason for not similarly recognizing mental injury as the foundation for a spousal loss of consortium claim.

Defendants further argue, however, that Mrs. Butler's loss of consortium claims fail as a matter of law because there is no spousal loss of consortium in claims seeking recovery under an insurance policy or for claims under the UTPA. Defendants again correctly point out that no Montana court has recognized recovery for loss of consortium in the context of breach of an insurance contract or improper claims-handling. A survey of case law from around the country reveals that courts are divided with regard to loss of consortium and insurance claims.

On one hand, some courts have held a spouse who is not a policyholder may not state a claim for loss of consortium or emotional distress based on a wrong committed on the policyholder. *See e.g. Bornstein v. Fireman's Fund Ins. Co.*, 623 F.Supp. 814, 815-16 (E.D. Wis. 1985); *Austero v. Nat'l Cas. Co. of Detroit, Mich.*, 133 Cal.Rptr. 107, 110-11 (Cal. Ct. App. 1976). These courts reason that although an insurance bad faith claim sounds in tort, the duty of good faith and fair dealing

arises from the contractual relationship, and runs only to the insured spouse.  *Id.*
Thus, because the uninsured spouse has no contractual relationship with the
insurer, the uninsured spouse does not have a claim for loss of consortium or
emotional distress.  *Id.*

On the other hand, other courts have recognized claims for loss of
consortium in connection with insurance cases.  For example, in *Poling v.
Motorists Mut. Ins. Co.*, 450 S.E.2d 635, 638 (W. Va. 1994), the Court held the
wife of an accident victim could pursue a loss of consortium claim against the
tortfeasor's insurer arising out of the insurer's alleged bad faith insurance
practices.  Likewise, in *Skinner v. Met. Life Ins. Co.*, 829 F.Supp.2d 669, 687 (N.D.
Ind. May 27, 2010), the Court held it was plausible that the husband of an insured
could have a claim for loss of consortium based on his wife's injuries under her
claim of insurance bad faith.

Here, the Court need not resolve this issue at this time.  Defendants do not
target any particular count of the Second Amended Complaint for dismissal of a
loss of consortium claim; rather, they broadly seek dismissal of all of Mrs. Butler's
claims.  Although Plaintiffs do allege a loss of consortium under their UTPA
claim, they do not confine the claim to that count.  The claim is also alleged in
connection with various other tort claims.  (*See* Doc. 47 at ¶¶ 44, 51, 58, 63, 68.)
The Court previously determined Mr. Butler has viable claims for deceit,

16

constructive fraud, negligent misrepresentation, and breach of insurance agent duty. (Doc. 40 at 11.) As a result, there are valid tort claims upon which Mrs. Butler may base her loss of consortium claims, apart from the UTPA claim. *See e.g. Lindsey v. Cuna Mut. Ins. Soc.*, 2010 WL 4397036, *5 (D. Haw. Oct. 29, 2010) (holding that because the insured had viable claims for negligent and intentional misrepresentation, there were claims (aside from insurance bad faith) upon which her husband could base loss of consortium).

It is yet to be determined whether the degree of harm Mr. Butler suffered is of such seriousness to ultimately warrant recovery by Mrs. Butler. But at this juncture, the Court finds Plaintiffs have alleged a sufficient factual basis to state a cognizable claim for relief.

Accordingly, the Court recommends Plaintiffs be permitted to proceed with Mrs. Butler's claims for loss of consortium.

> **3.     Counts XI-XIV: Alternative Claims-Handling Counts for Common Law Bad Faith, Negligence, Negligence *Per Se*, and Breach of Fiduciary Duty**

In Counts XI through XIV, Plaintiffs have alleged several "alternative" common law tort claims based upon claims-handling conduct. (Doc. 47 at ¶¶ 79-98.) Defendants Unified Life and Allied National move to dismiss these counts based on the limitations of actions provided under the UTPA. Mont. Code Ann. § 33-18-242(3) provides:

(3) An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action. An insured may not bring an action for bad faith in connection with the handling of an insurance claim.

This section bars common law claims against insurers that are predicated on conduct that occurred during the handling of an insurance claim. *West v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 2559966, *15 (D. Mont. June 28, 2011) ("The claims available to an insured from an insurer's handling of an insurance claim are only those causes of action recognized under the statute – breach of contract, fraud, or violations of the UTPA – and no other cause of action is permitted.'); *c.f. Thomas v. Northwestern Nat'l Ins. Co.*, 973 P.2d 804, 809 (Mont. 1998) (holding the UTPA did not bar an insured from asserting claims of negligence, bad faith and breach of fiduciary duty against its insurer, where the claims pertained to events that occurred prior to the handling of the insurance claim).

Here, the common law claims in Counts XI through XIV are based exclusively on claims-handling conduct. (*See* Doc. 47 at ¶¶ 80, 85, 90, 95.) Thus, the claims are preempted by the UTPA.

Nevertheless, Plaintiffs state that they bring these claims as alternative claims, and allege they would only arise under two contingencies: (1) if the UTPA is found not to apply to any of the Defendants because they are not insurers, or (2)

to the extent Mrs. Butler is found not to have a cause of action under the UTPA. (*Id.* at ¶ 80, 85, 90, 95.)

With respect to the first contingency, Unified Life and Allied National admit they are insurers, subject to the UTPA.  (Doc. 62 at ¶¶ 15-16.)  Thus, those defendants fall within the scope of Section 33-18-242(3), and the alternative counts fail as a matter of law as to Defendants Unified Life and Allied National under the first contingency.

With regard to Plaintiffs' second contingency, Defendants argue Plaintiffs should not be able to end-run the UTPA and assert otherwise barred common law claims through Mrs. Butler.  The Court agrees.

As Defendants persuasively argue, the fact the claims are being asserted by Mrs. Butler should not change the result.  The UTPA broadly preempts all common law claims related to claims-handling.  *See O'Fallon v. Farmers Ins. Exch.*, 859 P.2d 1008, 1014-15 (Mont. 1993) (noting the UTPA was intended to limit the causes of action that can be brought against an insurer related to claims-handling).  Plaintiffs have not cited any authority indicating that while an insured is barred from asserting common law claims-handling claims, the spouse of the insured, who has no relationship with the insurer, may bring such claims.  In the absence of clear guidance from the Montana Supreme Court recognizing such a

right, the Court finds the alternative common law counts fail as a matter of law
under Plaintiffs' second contingency.

Accordingly, the Court recommends that Plaintiffs' alternative common law
claims in Counts XI-XIV be dismissed as to Defendants Unified Life and Allied
National.

### 4.   Count VII:  Breach of Insurance Agent Absolute Duty

In Count VII, Plaintiffs allege a claim for breach of insurance agent absolute
duty on the part of NBoA.  (Doc. 47 at ¶¶ 65-66.)  Defendants previously moved to
dismiss this claim, and the motion was denied.  (Doc. 40 at 11.)  Defendants again
move to dismiss the claim on grounds that the claim lies solely against the
insurance agent, and not the insurers Unified Life and Allied National.  Defendants
argue that because Unified Life did issue a policy, it cannot be liable for failing to
procure a policy.

Plaintiffs, however, do not allege NBoA failed to procure any policy at all.
Rather, they assert NBoA failed to procure the "specific insurance that Mr.
Corchado was instructed to procure and promised that he would procure."  (Doc.
47 at ¶ 65.)  Thus, the fact that Unified Life issued a policy does not necessarily
defeat Plaintiffs' claim.

Further, as the Court previously held, Plaintiffs may assert this claim against
Defendants based on the conduct of their agent.  *See Tynes v. Bankers Life Co.*,

730 P.2d 1115, 1122 (Mont. 1986); *Cartwright v. Equitable Life Assur. Soc'y of the United States*, 914 P.2d 976, 979 (Mont. 1996).  Here, Plaintiffs allege Defendants acted in concert with NBoA, knew that NBoA's conduct constituted a breach of duty, and gave substantial assistance or encouragement to NBoA. Accordingly, taking these allegations as true, as the Court must at this stage, the Court finds Plaintiffs have stated a claim for breach of insurance agent duty.

The Court therefore recommends Plaintiffs be permitted to proceed with their claim in Count VII.

## III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED IN PART and DENIED IN PART.**  It is recommended that Count X be dismissed with prejudice as to Defendants Unified Life, Allied National, HII and NCE, and that Counts XI - XIV be dismissed with prejudice as to Defendants Unified Life and Allied National.  It is recommended that the motion to dismiss be denied in all other respects.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

**IT IS ORDERED**.

DATED this 18th day of July, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge