IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CHARLES M. BUTLER, III and CHOLE BUTLER<br><br>Plaintiffs,<br><br>vs.<br><br>UNIFIED LIFE INSURANCE COMPANY; HEALTH PLANS INTERMEDIARIES HOLDINGS, LLC, doing business as Health Insurance Innovations, doing business as Health Insurance Innovations, Inc.; ALLIED NATIONAL, INC.; NATIONAL BROKERS OF AMERICA, INC.; THE NATIONAL CONGRESS OF EMPLOYERS, INC.; and DOES 1-10<br>Defendants. | CV 17-50-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiffs Charles M. Butler, III and Chole Butler ("Plaintiffs") bring this action against Defendants Unified Life Insurance Company ("Unified"), Health Plan Intermediaries Holdings, LLC d/b/a Health Insurance Innovations, d/b/a Health Insurance Innovations, Inc. ("HII"), Allied National, Inc. ("Allied"), National Brokers of America, Inc. ("NBoA"), and National Congress of Employers, Inc. ("NCE") relating to a health insurance policy Mr. Butler purchased in February 2016.

1

Presently before the Court is Plaintiffs' Motion to Certify Class (Doc. 93). This motion has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and is fully briefed and ripe for the Court's review.  For the following reasons, the Court recommends that Plaintiffs' motion be denied.

## I.    BACKGROUND[1]

On February 27, 2016, William Corchado of NBoA sold a Unified Life Insurance short term medical ("STM") health insurance policy (the "Policy") to Mr. Butler over the telephone.  Mr. Corchado represented the policy had a $5,000 deductible, an 80/20 coinsurance agreement, and a $5,000 out-of-pocket maximum.  Mr. Corchado also told Mr. Butler that the Policy came with network access.

After purchasing the policy, Mr. Butler received an insurance card in the mail.  The card indicated Mr. Butler's coverage provided "network access" through the "MultiPlan Complementary Network."  The Policy, however, did not have network access.

On August 11, 2016, Mr. Butler was diagnosed with testicular cancer and incurred medical bills in connection with surgery and related cancer treatment.

---

[1] The Court has fully set forth the background facts in its Findings and Recommendations regarding the parties' various motions for summary judgment.

Mr. Butler's claims under the Policy were handled by Allied as a third-party administrator acting on behalf of Unified.

On March 16, 2017, Allied issued several Explanations of Benefits ("EOBs").  The EOBs indicated that Allied had discounted the charges from Mr. Butler's providers by approximately 25 to 75 percent.  The discounts shown on the EOBs were calculated using re-pricing software provided by Data iSight.

Because the Policy did not have network access, Plaintiffs assert that Mr. Butler was subject to balance billing for the difference between the providers' billed amounts and the re-priced amounts determined by Data iSight.

Plaintiffs filed this action on April 25, 2017.  (Doc. 1.)  Subsequently, Plaintiffs filed a Third Amended Complaint adding class claims.  (Doc. 181.)

Plaintiffs' class claims are based on two separate breach of contract allegations.  First, Plaintiffs assert all members of the putative class were sold identical STM policies, or policies that were substantially identical in all material respects to Mr. Butler's policy.  Plaintiffs allege Unified systematically and programmatically breached the insurance contracts by using the Data iSight software to discount medical charges to an amount below what was promised in the policies.  The Court has determined that Data iSight's repricing tool does not comply with the terms of the Policy.

Second, Plaintiffs assert each insured was sent a card that stated there was "Network Access" to the "MultiPlan Complementary Network," and that Mr. Corchado told "every prospective Unified [STM] insurance policyholder that they would be covered by a network." (Doc. 94 at 10.)  Plaintiffs allege Unified systematically and programmatically promised a network, but did not deliver one, and as a result all putative class members were subject to balance billing.  The Court has determined that Unified did not breach the insurance policy based on the network allegations.

## II.   ANALYSIS

### A.   Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23.  A party seeking to maintain a class action must demonstrate that each of the following prerequisites of Rule 23(a) are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The party must also meet at least one of the three criteria listed in Rule 23(b).  These include: (1) that there is a risk of prejudice from separate actions; (2) that declaratory or injunctive relief is appropriate as to the class; or (3) that

4

common questions of law or fact predominate, and a class action is superior to other methods of adjudication.  Fed. R. Civ. P. (b)(1) - (3).

The Court may certify a class only if it is satisfied, after a "rigorous analysis" that the party seeking certification has met the requirements of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).  Whether to grant class certification is within the discretion of the trial court.  *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).

### B.    Class Definition

"As a threshold matter, and apart from the explicit requirements of Rule 23, the party seeking class certification must demonstrate that an identifiable and ascertainable class exists."  *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  A class is ascertainable if it is defined with reference to objective criteria, and it is administratively feasible for the court to ascertain whether an individual is a member.  *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 122 (N.D. Cal. 2014).

Plaintiffs move to certify the following class:

> 1. All individuals who have purchased the Unified Life Insurance Company Short Term Medical Insurance Policy or any policy with similar, operative language;
>
> 2. who have paid their premiums;
>
> 3. and who have made one or more claims;

5

4. on which Unified assigned an amount for the claim based on an allowable charge determined according to the Data iSight formula; and

5. Unified assigned the amount within the applicable statutory period of limitations for written contracts dating back from the filing of the Plaintiff's Third Amended complaint.

(Doc. 94 at 13.)

The Court notes that the class Plaintiffs move to certify differs from the class alleged in the Third Amended Complaint.[2]  In their motion, Plaintiffs have omitted

---

[2] In the Third Amended Complaint, Plaintiffs sought to represent the following class:

 All individuals who have purchased the Unified Life Insurance Company Short Term Medical Insurance Policy, who have paid their premiums and who have made one or more claims that were paid based on an allowable charge amount that was less than the Reasonable and Customary Charge that is defined in the Policy as "the usual charge" in the geographic area and/or who were not afforded promised network protections against balance billing within the applicable statutory period of limitations for written contracts.

The class includes policyholders covered under the Policy attached hereto as Exhibit A and policyholders covered under other Unified STM policies that have similar language that defines Reasonable and Customary Charges as "the usual charge" in the geographic area, but whose claims were determined and/or paid at less than the usual charge in the geographic area. The class also includes policyholders whose policy, like Exhibit A hereto, refers to a "Network" and/or has received an insurance card identical or similar to the Card attached hereto as Exhibit B—showing that the coverage includes network access--when there was no network associated with their Policy and who were therefore exposed to balance billing when they submitted claims.

from the proposed class individuals "who were not afforded promised network protections against balance billing."  In their briefing, however, Plaintiffs argue certification is appropriate, in part, because Unified systematically and programmatically promised a network and then did not deliver one.  Thus, it is unclear precisely the scope of the class Plaintiffs seek to certify.  Nevertheless, because the Court has determined there was no breach of the Policy based on the lack of network access, the Court need not consider whether certification is appropriate as to individuals "who were not afforded promised network protections against balance billing."  Therefore, the Court will limit its analysis to whether class certification is appropriate for individuals whose claims were paid based on the Data iSight formula.[3]

_____

(Doc. 181 at ¶ 99.)

[3] The Court notes that even if it were to analyze whether class certification is appropriate for individuals who were allegedly promised network access, the Court would not find the Rule 23(a) prerequisites were met.  For example, Plaintiffs have not established numerosity with regard to the alleged network breach.  Plaintiffs allege Mr. Corchado told every prospective Unified STM insurance policyholder that they would be covered by a network.  But Plaintiffs have not produced any evidence indicating how many individuals actually purchased a Unified policy from Mr. Corchado after hearing this representation.  Further, commonality and typicality are lacking.  For one, Mr. Corchado did not sell every Unified STM insurance policy, and Plaintiffs acknowledge that other agents may not have represented there was a network.  But even assuming all members of the class were promised a network, there are individual questions regarding whether they suffered the same injury.  Some class members may never have actually been subjected to balance billing, despite the lack of promised network access.  For example, some providers may have elected not to bill the insured for the difference between their

The Court finds the proposed class is ascertainable.  The class definition is specific and certain, and is specifically tied to Mr. Butler's Policy which is appended to the Third Amended Complaint.  It further appears that the class members can be readily identified by Unified based on its ability to conduct an analysis of claims, as demonstrated by David Scanlan's rebuttal expert report.

### C.     Rule 23(a) Requirements

#### 1.     *Numerosity*

Rule 23(a)(1) requires that the class be sufficiently numerous so that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Generally, courts find this requirement satisfied when a class includes at least 40 members.  *Rannis v. Recchia*, 380 F. Appx. 646, 651 (9th Cir. 2010).  Where Plaintiffs seek injunctive and declaratory relief, the numerosity requirement is relaxed and Plaintiffs may rely on reasonable inferences arising from Plaintiffs' other evidence to show that

---

charged amount and the amount received from the insurer.  Other providers may have agreed to release their claims for any balance billing amounts.  *See e.g. Littleton v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 128577 (W.D. Ark. Jan 8, 2015) (denying certification in a case where insurer allegedly breached its policy by paying reduced rates for medical services, and noting "[i]t is impossible to assume that because an insured (1) received a bill for medical services and (2) State Farm paid a discounted amount on the bill after applying a reduced rate, the insured necessarily suffered an injury.")  In addition, for those insureds who were subject to balance billing, there would be fact-intensive, individualized questions as to each putative class member's damages.  These questions would likely require the involvement of each insured's medical providers to determine the amount the insured had personally paid or was still due and owing.

the number of class members is sufficient to make joinder impracticable.  *Civil Rights Ed. & Enf't Ctr. v. Hospitality Props. Trust*, 317 F.R.D. 91, 100 (N.D. Cal. 2016); *Sueoka v. U.S.*, 101 Fed.Appx 649, 653 (9th Cir. 2004).

Here, Plaintiffs estimate the putative class to be in the thousands.  Plaintiffs allege Unified had a system-wide business practice of paying benefits based on the Data iSight methodology, which resulted in payments to all insureds that were less than what was promised by their policies.  Plaintiffs point out that David Scanlan, Allied's claim manager submitted a rebuttal expert report that indicated Allied processed over 291,000 claims for Unified over a four-year period.  (Doc. 94-8 at 3.)  Even assuming multiple claims were submitted by each insured, it is reasonable to assume the number of putative class members numbers in the thousands.  Accordingly, Plaintiffs satisfy the numerosity requirement.

2.    *Commonality*

Under Rule 23(a)(2), Plaintiffs must show that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2).  Commonality requires Plaintiffs to show the class members "have suffered the same injury," and that their claims must be capable of class-wide resolution "in one stroke." *Dukes*, 564 U.S. at 350.

Here, all proposed class members had Unified STM insurance policies that contained a common definition of "Reasonable and Customary Charge."  Unified

9

paid all of their claims based on an allowable charge determined by the Data iSight methodology.  Thus, the question of whether Unified breached the insurance contract by using Data iSight to discount medical bills to lower than the "Reasonable and Customary Charge" as defined in the Policy is common to all class members.  *See e.g. Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (noting that "claims arising from interpretations of a form contract," such as an insurance contract containing uniform language, "appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").  Futher, the question is amenable to a common answer.  *See Dukes*, 564 U.S. at 350 (noting that "what matters to class certification" is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original).

Accordingly, the Court finds Plaintiffs satisfy the commonality requirement.

3.    *Typicality*

Rule 23(a)(3) requires that the claims of the named plaintiffs be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The Supreme Court has

10

noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge [because both seek to determine] whether the named plaintiff's claim and the class claims are so interrelated that interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349, n.5.

Here, Mr. Butler and all class members suffered a similar injury as a result of Unified's use of the Data iSight methodology – the underpayment of claims. Moreover, Unified's conduct was not unique to Mr. Butler.  Rather, all class members have the same policy, with substantially the same "usual charge" language in the definition of "Reasonable and Customary Charge."  Unified has not disputed that Allied used the Data iSight technology to adjust all claims submitted under the Unified STM insurance policies.  As a result, the Court finds Plaintiffs claims are sufficiently typical of the class claims.

### 4.   *Adequacy*

Rule 23(a)(4) requires the named plaintiff to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether this requirement has been met, courts look to two factors: (1) whether the named plaintiff's counsel is competent to represent the class; and (2) whether there exists any conflict of interest between the class representative and the rest of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, there is no dispute that Plaintiffs' counsel is competent to handle this matter on behalf of the class; nor is there any indication that Mr. Butler has any conflict of interest with the class members.  To the contrary, Mr. Butler's claims with regard to Unified's use of Data iSight are identical to the class.  The Court, therefore, finds Plaintiffs would adequately represent the putative class.

### D.    Rule 23(b)(2)

Plaintiffs contend this case should be certified under Rule 23(b)(2) because it seeks a declaratory ruling and corresponding injunctive relief with respect to substantially identical insurance policy provisions and a common method of adjusting claims.  Plaintiffs further assert an award of monetary damages is permissible in this case because it is incidental to the declaratory relief, and only requires mechanical calculations to be performed.  Unified counters that certification is not proper because it no longer sells STM insurance policies.

Certification is appropriate under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) may be satisfied if "class members complain of a pattern or practice that is generally applicable to the class as a whole."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory

12

remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011.)  Class certification would not be appropriate under Rule 23(b)(2), however, "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  *Id.*

Requests for monetary damages are permissible under Rule 23(b)(2), so long as they are incidental to the litigation, and do not require an individualized determination.  *See Dukes*, 564 U.S. at 360-62 (stating claims for monetary relief may not be certified under 23(b)(2) "at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief"); *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 363, (7th Cir. 2012) ("Should it appear that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program . . . the district court can award that relief without terminating the class action and leaving the class members to their own devices and also without converting this (b)(2) class action to a (b)(3) class action."); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 479 (C.D. Cal. 2012).

Here, Plaintiffs allege Unified acted identically with regard to all members of the class.  Specifically, Plaintiffs claim Unified systematically paid less than what the insurance contract promised based on its use of the Data iSight repricing

software.  Plaintiffs seek a declaration that Unified breached the policy by using

Data iSight software, which determined "Reasonable and Customary Charge"

based on amounts usually accepted as opposed to amounts usually charged.

Plaintiffs seek an injunction requiring Unified to re-adjust the putative class

members' claims and pay the lesser of the billed charge or the Reasonable and

Customary Charge, being defined as the usual charge in the geographic area.

     The Court finds certification under Rule 23(b)(2) is not appropriate in this

case.  First, although Plaintiffs frame their claim in terms of declaratory and

injunctive relief, it is actually a claim for monetary damages.  Generally "suits

seeking (whether by judgment, injunction, or declaration) to compel the defendant

to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase

has traditionally been applied, since they seek no more than compensation for loss

resulting from the defendant's breach of legal duty."  *Great-W. Life & Annuity Ins.*

*Co. v. Knudson,* 534 U.S. 204, 210 (2002).

     Here, Plaintiffs' cognizable injury is the underpayment of their insurance

claims.  As a remedy, Plaintiffs request the Court to order Unified to re-process

and pay their claims.  Courts have declined to certify Rule 23(b)(2) classes in such

situations.  *See e.g. Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889

(7th Cir. 2011) (holding that where the plaintiffs had only one cognizable injury –

the underpayment of their insurance claims – the case was "simply an action for

14

damages – not the dual remedies of an injunction plus damages – and if suitable for class adjudication at all, may be certified only under Rule 23(b)(3)"); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530-31 (D.C. Cir. 2006) ("[W]hen the relief sought would simply serve as a foundation for a damages award, [] or when the requested injunctive or declaratory relief merely attempts to reframe a damages claim, [] the class may not be certified pursuant to Rule 23(b)(2).") (internal citations omitted).

Second, even if the Court construes Plaintiffs' claim as seeking only injunctive relief, certification is still improper under Rule 23(b)(2) because the request for monetary damages is more than incidental.  Rule 23(b)(2) certification was not intended to "extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed.R.Civ.P. 23(b)(3) advisory committee's notes to 1966 amendment.  "Money damages are incidental if a court can calculate them using objective standards and not depend on subjective differences of each class member."  *DWFII Corp. v. State Farm Mut, Auto. Ins. Co.*, 271 F.R.D. 676, 688 (S.D. Fla. 2010).

Here, any damages calculation would involve more than a simple mechanical determination based on objective criteria.  In order for Unified to re-adjust the class members' claims, and pay the Reasonable and Customary Charge without reliance on the Data iSight methodology, Unified will have to reassess

whether each charge is reasonable.  The Policy provides that in order to determine whether a charge is "reasonable," the insurer considers a non-exhaustive list of factors, which include:

    a.   the complexity of service or supply involved;

    b.   the degree of professional skill, experience and training required for a Doctor to perform the procedure or service;

    c.   the severity or nature of the Bodily Injury or Sickness being treated;

    d.   the provider's adherence or failure to adhere to charge amounts and practices, including but not limited to billing, itemization, coding, bundling (including restriction against unbundling such as may occur in multiple procedures, bilateral procedures or when a Doctor is assisting another Doctor) and documentation practices, generally accepted by an established United States medical society or other pertinent professional organization or governmental agency as determined by Us; or

    d.   the cost to the provider of providing the service or supplied, or performing the procedure.

(Doc. 181-1 at 9-10.)

       Thus, a finding of class-wide liability would not lead to a method of fixed, uniform damages recovery based on objective criteria.  Instead, each individual class member's damages award would require an individual determination of the numerous factors set forth in the Policy, including what medical services each insured received, details about each insured's medical condition, and details relating to each provider.

       Third, the requested injunction would not provide "final" relief, as required by Rule 23(b)(2).  Rather, ordering Unified to re-adjust the putative class

members' claims would simply initiate the process for individualized

determinations of damages.  "An injunction is not a final remedy if it would merely

lay an evidentiary foundation for subsequent determinations of liability."

*Kartman*, 634 F.3d at 893.  Further, it is conceivable that the putative class

members may want to challenge the determinations that result from the re-

adjustment of their claims, setting up further individualized inquires.

Accordingly, the Court finds certification under Rule 23(b)(2) is not

appropriate in the circumstances of this case.

### E.      Rule 23(b)(3)

Plaintiffs alternatively argue the Court should certify this action under Rule

23(b)(3).  Certification under Rule 23(b)(3) requires the Court to find (1) issues

common to the class "predominate" over issues unique to individual class

members, and (2) that a class action is "superior" to other methods of adjudication.

Fed.R.Civ.P. 23(b)(3).

#### 1.     *Predominance*

The predominance inquiry under Rule 23(b)(3) is more stringent than the

commonality criteria under Rule 23(a)(2).  *Amchem Prod., Inc. v. Windsor*, 521

U.S. 591, 623-24 (1997).  "In order to satisfy the predominance requirement, a

plaintiff must demonstrate that the claims are 'capable of proof at trial through

evidence that is common to the class rather than individual to its members."

*Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 528 (S.D. Cal. 2011).

Here, the commons facts the putative class members share are that Unified contractually promised to pay benefits based on Reasonable and Customary Charges, defined as "the usual charge" in the geographic area, and that Unified actually paid benefits based on the Data iSight methodology.  The common legal question is whether Unified's use of Data iSight breached the policies.  But as discussed in relation to Rule 23(b)(2), the fact Unified may have breached its contractual obligations by using Data iSight does not establish common damages.

A variance in the amount of damages to which each class member may be entitled does not automatically preclude class certification.  *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013.)  Nevertheless, there must be some standard method by which damages can be calculated.  *Id.* (noting predominance was satisfied where "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated."); *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 128 (N.D. Cal. 2014) (stating that to satisfy the predominance requirement, plaintiffs must show "the damages resulting from that injury [are] measurable 'on a class-wide basis' through the use of a 'common methodology.'") (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013)).

18

Here, Plaintiffs have not demonstrated there is a common method to determine each class members' damages.  Rather, determining the amount Unified should have paid to each insured under the Policy would have to be determined on an individualized basis, considering a multitude of factors that would vary from insured to insured.  Given that individualized determinations relating to damages would need to be made for every potential class member, the Court finds individual issues would predominate over issues common to the class.

As such, class certification is not appropriate under Rule 23(b)(3).

> 2. *Superiority*

In assessing the superiority requirement, courts may consider the following four factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed.R.Civ.P. 23(b)(3)(A)-(D).  Generally, if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  However, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or

19

her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

Plaintiffs broadly assert that class treatment is appropriate under Rule 23(b)(3), but Plaintiffs do not specifically address superiority.  For similar reasons why the Court finds predominance is not met, the Court finds class certification is not a superior method of adjudication.  In light of the individualized nature of the damages determinations, resolving the putative class members' claims would make management of a class of thousands of insureds difficult.

Accordingly, the Court finds certification under Rule 23(b)(3) is not appropriate.

## F.    Rule 23(c)(4)

Plaintiffs argue that even if the Court declines to certify the class under Rule 23(b)(2) or (b)(3), certification is still available under Rule 23(c)(4).  Rule 23(c)(4) states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed.R.Civ.P. 23(c)(4).

The Ninth Circuit has observed that "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234

(9th Cir.1996).  However, "a Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))."  *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015) (collecting cases).   Moreover, the Ninth Circuit has cautioned that certification of a Rule 23(c)(4) issues class "is 'appropriate' only if it ''materially advances the disposition of the litigation as a whole.'"  *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017).  The "use of Rule 23(c)(4) is generally rejected, for example, where the common issues are inextricably tied to the individual issues, [] or where the individual issues still make the case unmanageable.  *In re Paxil Litig.*, 212 F.R.D. 539, 543 (C.D. Cal. 2003) (internal citations omitted).

Here, Plaintiffs fail to articulate why certification under Rule 23(c)(4) would be more efficient or desirable than separate actions.  Further, it is unclear whether Plaintiffs intend "to later certify a damages class, allow class members to individually pursue damages, or ha[ve] some other undisclosed plan for resolving this case."  *Rahman*, 693 F. App'x at 580.  Accordingly, the Court finds Plaintiffs have failed to meet their burden to show class certification is appropriate under Rule 23(c)(4).

/ / /

/ / /

## III.   CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiffs' Motion to Certify Class (Doc. 93) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 9th day of August, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge

22